UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| CHRISTINE A. NORTHCUTT, | ) |
| Plaintiff, | ) |
| v. | ) Cause No. 4:05CV851 RWS |
| CITY OF WILDWOOD, et al., | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

This matter is before me on Defendants' motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) [#5]. Plaintiff Christine Northcutt's First Amended Complaint alleges that Defendants City of Wildwood ("Wildwood"), Lynne Greene-Beldner, and John D. Wild (collectively "Defendants") violated her civil rights, wrongfully discharged her in violation of public policy, and wrongfully discharged her in violation of the Wildwood City Charter. Defendants argue that the complaint should be dismissed for failure to state a claim upon which relief can be granted. The motion will be granted in part and denied in part.

### I.  BACKGROUND

Northcutt alleges the following facts:

Northcutt formerly worked as a court clerk for Wildwood. John Wild was the mayor of Wildwood. Greene-Beldner was an interim city administrator for Wildwood.

Northcutt began working as a court clerk for the city of Wildwood in September 1995, the same month that Wildwood was incorporated. She and her husband, Herbert Northcutt, had been active in local politics before the city was incorporated. Northcutt and her husband were affiliated with the political group that advocated for the incorporation of Wildwood and for a master plan

for controlled development within Wildwood. Northcutt and her husband were politically opposed to groups that did not support planned development. One group that did not support planned development of Wildwood was the Chesterfield Township Republican Organization ("CTRO"). Herbert Northcutt ran for a seat on the Wildwood City Council in 2002.

During the 2002 election season, Herbert Northcutt made numerous complaints to authorities in the local and state Republican Party alleging that Wild and the CTRO were violating the Wildwood City Charter with respect to some of their campaign tactics.

After the April 2002 election, members of the CTRO controlled a majority of the seats on the City Council. Wild and Greene-Beldner were affiliated with the CTRO. Herbert Northcutt was defeated in his effort to become a member of the City Council.

Northcutt alleges that shortly after the April 2002 election, city administrator Carl Ramey told her that Mayor Wild had instructed him to find a reason to dismiss Northcutt from her job. Northcutt alleges that she received a similar warning from "a member of the City Council." Northcutt alleges that Wild and Greene-Beldner supplied false reasons to Ramey in support of dismissing Northcutt. Ramey advised Northcutt that he would move to make her position a regular city employment position, which would give her certain employment rights, such as the right to a hearing to challenge any adverse employment action.

In June 2002, Ramey resigned as city administrator. Greene-Beldner was appointed as interim city administrator.

Northcutt alleges that after Greene-Beldner became interim city adminsitrator, she was "forced to endure a hostile and discriminatory work environment because of her political opinions and affiliations . . ." Northcutt alleges that Defendants created a hostile and discriminatory work

environment in the following ways: she was demeaned by Greene-Beldner, she was assigned an unreasonable work load, she was not allowed to use overtime to complete necessary work, her name plate was removed from the counter, water was poured on her desk and rolodex, a door next to her office was sabotaged so that it make noise and annoy her, she was treated less favorably as to the use of flex-time and comp-time, she was isolated from other employees, Greene-Beldner, at Wild's direction and instruction, issued her an inaccurate negative and critical job performance evaluation, and that Defendants conducted a "survey" of the employees of City Hall to "determine if every city employee disliked her."

In December 2002, Northcutt advised the city that she sustained a work-related injury. She was subsequently assigned a claim number for her workers' compensation claim. She advised the city that she was suffering from various ailments that were caused by the stress of her work and from the hostile work environment she was forced to endure. Northcutt was discharged on January 14, 2003.

## II. STANDARD

In ruling on a motion to dismiss, I must accept as true all the factual allegations in a complaint and view them in the light most favorable to the Plaintiff. Kohl v. Casson, 5 F.3d 1141, 1148 (8th Cir. 1993). A cause of action should not be dismissed for failure to state a claim unless, from the face of the complaint, it appears beyond a reasonable doubt that the Plaintiff can prove no set of facts in support of the claim that would entitle him to relief. Davis v. Hall, 992 F.2d 151, 152 (8th Cir. 1993).

## III. ANALYSIS

### A. Count I: Free Speech § 1983 Claim

Northcutt alleges that Defendants created a hostile work environment and terminated her employment because of her political speech activities. Such alleged facts are sufficient to state a cognizable claim under § 1983. E.g., Helvey v. City of Maplewood, 154 F.3d 841, 844 (8th Cir. 1998) (district court erred in granting defendants' summary judgment motion against plaintiff's section 1983 free speech claim against city and city official).

As a result, Defendants' motion to dismiss on this Count will be denied.

### B. Count II: Substantive Due Process § 1983 Claim

Northcutt alleges that she was deprived of her "liberty interest in her right to engage in the common occupations of life" and of her "liberty interest in the freedom to marry" when Defendants created a hostile work environment and terminated her employment because of her association with her politically active husband.

Defendants argue, first, that in Missouri, municipal employees do not have a § 1983 substantive due process occupational liberty interest under the Fourteenth Amendment. Second, Defendants argue that even if Northcutt was forced to endure a hostile work environment as alleged, she has not alleged any facts that implicate her freedom to marry or be married. Defendants are correct, and Count II of Northcutt's First Amended Complaint will be dismissed.

The United States Court of Appeals for the Eighth Circuit has held "that the so-called '[o]ccupational liberty . . . is not protected by substantive due process. Rather, any cause of action for the deprivation of occupational liberty [is] confined to a claim under procedural due process; there is no such cause of action under substantive due process.'" Singleton v. Cecil, 176 F.3d 419, 428 (8th Cir. 1999) (quoting Zorzi v. County of Putnam, 30 F.3d 885, 895 (7th Cir. 1994)). As a

result, Northcutt's claim that Defendants violated her occupational liberty interest fails as a matter of law.

The right to marry is implicated when a government prohibits certain persons from marrying. E.g., Loving v. Virginia, 388 U.S. 1 (1967) (finding Virginia's prohibition on interracial marriage unconstitutional). A government impermissibly infringes on a person's right to marry when it prohibits a person from marrying for an unconstitutional reason.

In this case, Northcutt is married. As a result, her liberty interest in the freedom to marry is not implicated. Count II will be dismissed for failure to state a claim.

### C. *Count III: Wrongful Discharge in Violation of Public Policy*

Northcutt alleges that Wildwood terminated her because she exercised her rights under the Workers' Compensation Act. She further alleges that Wildwood has waived its sovereign immunity on this claim because it "maintains a policy of insurance with respect to tort claims filed against it."

Mo. Rev. Stat. § 287.780 provides that: "No employer or agent shall discharge or in any way discriminate against any employee for exercising any of his rights under this chapter. Any employee who has been discharged or discriminated against shall have a civil action for damages against his employer." Under a plain reading of the statute, Northcutt has stated a claim upon which relief can be granted in Count III.

Defendants argue that Wildwood has not waived its sovereign immunity because "a public entity does not waive its sovereign immunity by maintaining an insurance policy when that policy includes a provision stating that the policy is not meant to constitute a waiver of sovereign immunity." Wildwood has presented me with the insurance policy, and Wildwood argues that the

policy contains a provision stating that the policy is not meant to constitute a waiver of sovereign immunity.

I will decline to reach the merits of Wildwood's assertion for the purposes of deciding the motion to dismiss. I find that it will be appropriate to consider this issue after Northcutt has had the opportunity to conduct discovery.

As a result, Defendants' motion to dismiss on this Count will be denied.

### D. *Count IV: Wrongful Violation in Violation of the Wildwood City Charter*

Plaintiff alleges that the Wildwood City Charter prevents the mayor from removing city employees. Defendant argues that there is no private cause of action for enforcing the articles of the City Charter. Defendant argues that the City Charter provides for criminal penalties in cases where violations of the City Charter occur. However, the portion of the City Charter that Defendants cite to regarding criminal penalties has not been provided to the Court, so I do not have the necessary evidence before me to evaluate whether to read a private cause of action into the City Charter.

As a result, Defendants' motion to dismiss on this Count will be denied.

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) [#5] is **GRANTED** in part and **DENIED** in part. Count II of Plaintiff's First Amended Complaint will be dismissed for failure to state a claim.

Dated this 16th day of December, 2005.

_____
RODNEY W. SIPPEL
UNITED STATES DISTRICT JUDGE