UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| CHRISTINE NORTHCUTT, ) | |
| ) | |
| Plaintiff(s), ) | |
| ) | |
| vs. ) | Case No. 4:05CV00851 RWS |
| ) | |
| CITY OF WILDWOOD, MISSOURI, et al., ) | |
| ) | |
| Defendant(s). ) | |

## **MEMORANDUM AND ORDER**

This matter is before me on Defendants John Wild and Lynne Greene-Beldner's Motion for Summary Judgment [#17]. Wild and Greene-Beldner ("Defendants") argue that they are entitled to judgment as a matter of law because:

- they did not terminate Northcutt's employment;

- they are entitled to qualified immunity against Northcutt's 42 U.S.C. § 1983 claim;

- they are entitled to official immunity against Northcutt's state law claims;

- Northcutt's Worker's Compensation Claim was not the exclusive cause of her termination; and

- neither Wild nor Greene-Beldner violated the City of Wildwood's Charter.

For the reasons discussed below, I will deny the motion for summary judgment in its entirety.

*Background*

This lawsuit is based upon Plaintiff Christine Northcutt's First Amended Petition, which was removed from state court. The undisputed facts in this case are limited to the following: Northcutt is the former municipal court clerk of Wildwood, Missouri. The City of Wildwood ("Wildwood") terminated Northcutt's employment on January 13, 2003 by a 12-2 vote of its City

Council. Northcutt's First Amended Petition claims her termination was unlawful because it infringed on her First Amendment rights (Count I), because it was in retaliation for exercising rights to workers compensation (Count III), or because it violated Wildwood's Charter (Count IV). On December 16, 2005, I dismissed Count II for failure to state a claim based upon Northcutt's allegations that she was terminated because of her husband's political activities.

Defendant John Wild was elected mayor of the City of Wildwood in April 2000 and served in that position through April 2004. Defendant Lynne Greene-Beldner has been the City Clerk for the City of Wildwood since its incorporation. She also served as the interim City Administrator beginning on June 10, 2002 and was in that position at the time of the alleged wrongful discharge.

***Standard***

Summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmoving party, demonstrates that there is no genuine issue regarding any material fact and that the moving party is entitled to judgment as a matter of law. Lynn v. Deaconess Medical Center, 160 F.3d 484, 486 (8th Cir. 1998) (citing Fed. R. Civ. P. 56(c)). The "party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrates the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).

When such a motion is made and supported by the movant, the nonmoving party may not rest on his pleadings but must produce sufficient evidence to support the existence of the essential elements of his case on which he bears the burden of proof. Id. at 324. In resisting a properly

supported motion for summary judgment, the nonmoving party has an affirmative burden to designate specific facts creating a triable controversy. Crossley v. Georgia-Pacific Corp., 355 F.3d 1112, 1113 (8th Cir. 2004).

*Analysis*

**Termination of Northcutt's Employment**

Defendants Wild and Greene-Beldner argue that they are not liable for Northcutt's termination because neither terminated Northcutt nor had the power to terminate Northcutt. However, Resolution #2002-23 of the Council of the City of Wildwood provides that Greene-Beldner, as interim City Administrator, had the power to fire employees with the consent of the Council. There is also evidence that at the January 13, 2003 Council meeting, Greene-Beldner recommended Northcutt's termination to the Council and the Council agreed. Because there is a dispute of material fact over whether Greene-Beldner terminated Northcutt, I will deny summary judgment in favor of Greene-Beldner on this issue.

There is also evidence that "*Wild* let it be known that he wanted [City Administrator] Ramey to find reasons 'to get rid of' Northcutt." Even if this particular statement is hearsay, as argued by Wild, at this stage of the lawsuit I am required to assume the facts in the light most favorable to Northcutt and permit further discovery on these alleged statements. Northcutt has also presented evidence that Wild participated in meetings with the Council during which Northcutt's employment with the City was discussed and that at the end of the December 10, 2002 evaluation meeting, Wild told Northcutt that if she decided to quit, she could come back that evening, leave her resignation letter on her desk and leave her keys. A reasonable jury could find that this was meant to encourage Northcutt to resign, rather than "improve" Northcutt's performance. I cannot as a matter of law find there are no facts supporting Northcutt's claim.

At this early stage of discovery, there is a genuine dispute of material fact over whether Wild terminated Northcutt. I will deny summary judgment in favor of Wild on this issue.

**<u>Qualified Immunity</u>**

Defendants next argue that they are entitled to qualified immunity on Northcutt's section 1983 claim.

Qualified immunity protects public officials from personal liability under section 1983 when "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." <u>Hinshaw v. Smith</u>, 436 F.3d 997, 1004 (8th Cir. 2006) (quoting <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982) (internal marks omitted)). In determining whether qualified immunity applies, a court must first address "whether the facts alleged show that the state actor's conduct violated a constitutional right". <u>Id.</u> If a constitutional right *may* have been violated, the court next proceeds to determine whether the right was clearly established, which is a fact-intensive inquiry and "must be undertaken in light of the specific context of the case, not as a broad general proposition." <u>Davis v. Hall</u>, 375 F.3d 703, 712 (8th Cir. 2004).

The Eighth Circuit has repeatedly held that retaliation against the exercise of First Amendment rights is a basis for section 1983 liability. <u>Pendleton v. St. Louis County</u>, 178 F.3d 1007, 1011 (8th Cir. 1999). Northcutt argues that while she did not engage in formal campaigning, she "expressed her opinion as a private citizen that voters should support her husband in his ward and should support the pro master plan candidates and oppose the CTRO candidates in other wards." Northcutt alleges that Defendants Wild and Greene-Beldner created a hostile work environment and worked for her termination because of her protected speech.

Based upon the facts alleged by Northcutt, a reasonable jury could find that Defendants' conduct violated her First Amendment right to free speech, leading me to the second step of the qualified immunity analysis - whether the right was clearly established.

The Eighth Circuit has "taken a broad view of what constitutes 'clearly established law' for the purposes of a qualified immunity inquiry..." Sexton v. Martin, 210 F.3d 905, 909-910 (8th Cir. 2000) (quoting Boswell v. Sherburne County, 849 F.2d 1117, 1121 (8th Cir. 1988)). "For a right to be deemed clearly established, the 'contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" Id. (quoting Buckley v. Rogerson, 133 F.3d 1125, 1128 (8th Cir. 1998) (quoting Anderson v. Creighton, 483 U.S. 635, 640 (1987))). However, "it is only necessary that the unlawfulness of the official's act [be] apparent in view of pre-existing law." Id. (quoting Hall v. Lombardi, 996 F.2d 954, 958 (1993)). Therefore, if the law claimed to have been violated was clearly established, the qualified immunity defense ordinarily fails, "since a reasonably competent public official should know the law governing his conduct." Id. (quoting Harlow, 457 U.S. at 818-19).

Since 1976, the United States Supreme Court has held that the dismissal of a public employee based upon her political affiliation violates both the First and Fourteenth Amendments, unless the employee holds a policymaking position. Elrod v. Burns, 427 U.S. 347 (1976). In Branti v. Finkel, 445 U.S. 507 (1980), the Court built upon the Elrod decision, holding that a public employee is protected from discharge due to a change in the political environment. The Court held that "the ultimate inquiry is not whether the label 'policymaker' or 'confidential' fits a particular position; rather, the question is whether the hiring authority can demonstrate that party affiliation is an appropriate requirement for the effective performance of the public office

involved." Id. at 518. In this case, Defendants have not shown that political affiliation was a necessary requirement of Northcutt's court clerk position.

Because the Supreme Court's holding in Elrod v. Burns has been in effect since 1976, it is clearly established that under both the First and Fourteenth Amendments, a public employee may not be dismissed based upon her political affiliation, unless the employee holds a policymaking position. Defendants have presented evidence and argued that Northcutt's behavior was the reason for her termination. However, Northcutt has presented evidence that she received positive performance evaluations and was never notified of any behavior problems at work. At this early stage of discovery, a question of material fact exists regarding whether Defendants Wild and Greene-Beldner retaliated against or dismissed Northcutt based on her exercising her First Amendment rights.

I will deny summary judgment on the issue of qualified immunity.

**Official Immunity**

Defendants next argue that they are entitled to official immunity from Northcutt's claims under Missouri law in Counts III and IV because those claims are based on the exercise of discretionary functions regarding the reviewing of and assisting employees at City Hall. The doctrine of official immunity protects government officials from lawsuits in the exercise of all but their ministerial functions. Oberkramer v. City of Ellisville, 650 S.W.2d 286, 295 (Mo.App. 1983). A government official is immune from suit for any act that requires the official to exercise judgment as part of a decision-making process. Id. Consequently, a government official is subject to suit only for negligently performing ministerial acts. Id. Defendants argue that none of the acts alleged by Northcutt concern ministerial duties, much less negligent performance of those duties.

However, "official immunity does not apply to discretionary acts done in bad faith or with malice." Blue v. Harrah's N. Kan. City, LLC, 170 S.W.3d 466, 479 (Mo. Ct. App. 2005). "A defendant acts with malice when he wantonly does that which a man of reasonable intelligence would know to be contrary to his duty and which he intends to be prejudicial or injurious to another." Id. "Bad faith, although not susceptible of concrete definition, embraces more than bad judgment or negligence. It imports a dishonest purpose, moral obliquity, conscious wrongdoing, breach of a known duty through some ulterior motive or ill will partaking of the nature of fraud." Id. At this early stage of discovery, a question of material fact exists regarding whether Defendants acted in bad faith or with malice.

Summary judgment on the basis of official immunity will be denied.

**Worker's Compensation Claim**

An action under R.S.Mo. section 287.780 has four elements: "(1) plaintiff's status as an employee of defendant before injury, (2) plaintiff's exercise of a right granted by chapter 287, (3) employer's discharge of or discrimination against plaintiff, and (4) an *exclusive* causal relationship between plaintiff's action and defendant's actions." Crabtree v. Bugby, 967 S.W.2d 66, 70 (Mo. 1998) (emphasis added). Defendants argue that Northcutt has no claim under section 287.780 because her submission of accident report forms to Wildwood's insurer was not the exclusive reason Wildwood terminated her employment. At this early stage of discovery, a question of material fact exists regarding whether Northcutt was fired exclusively for filing a workers' compensation claim.

Summary judgment on Count III will be denied.

**City of Wildwood's Charter**

Defendants' final argument is that Northcutt has no private cause of action based on Wildwood's City Charter. A private cause of action exists either when there is an express provision establishing a private cause of action, or when there is a clear indication of legislative intent to establish a private cause of action. Johnson v. Kraft Gen. Foods, 885 S.W.2d 334, 336 (Mo. 1994). The Wildwood City Charter does not expressly grant any individual the right to a private action for any violation of its terms and creates a criminal liability for violation of its code of ethics. Art. XI, § 11.4(e).

However, Northcutt argues that the Charter does create an implied private cause of action.

> When a legislative provision protects a class of persons by proscribing or requiring certain conduct but does not provide a civil remedy for the violation, *the court may, if it determines that the remedy is appropriate in furtherance of the purpose of the legislation and needed to assure the effectiveness of the provision, accord to an injured member of the class a right of action, using a suitable existing tort action or a new cause of action analogous to an existing tort action.* [emphasis added]

State ex rel. Ashcroft v. Kansas City Firefighters Local No. 42, 672 S.W.2d 99, 109 (Mo. Ct. App. 1984) (quoting Restatement (Second) of Torts § 874A (1977)).

Because this is a state claim, I will apply Missouri law. The Missouri state courts recognize the common law principle that "where there is a right, there is a remedy." Id. "To enjoy status to sue on a cause of action implied by the policy of a statute, however, the suitor must be a member of the class for whose especial benefit the statute was enacted." Id. Northcutt argues that sections 4.4 and 11.4 of the Charter were designed specifically to protect City employees, like Northcutt, and were enacted by the people of Wildwood to promote the common

good. Therefore, Northcutt argues she is a member of the class of city employees, who are intended to be benefitted by the statute, creating a private cause of action under the Charter.

Section 4.4(b) prohibits the Mayor of Wildwood from dictating the removal of "any City administrative officer or employee, whom the City Administrator or any of his or her subordinates are empowered to appoint or hire as established in this Charter." However, section 4.4(b) does allow the Mayor to "express his or her views and discuss with the City Administrator anything pertaining to the appointment, hiring or removal of such officer or employee." Section 11.4(a) prohibits any person from being removed from, or being discriminated against with respect to, any City position or appointive City administrative office because of his or her political affiliations.

There is not enough on the record before me now to say as a matter of law that Northcutt does not qualify as a member of the class of City employees that are intended to be protected by these sections of the Charter. There is also not enough on the record before me to find as a matter of law that the Charter does not create an implied private cause of action to remedy violations of sections 4.4 and 11.4.

As discussed above, at this early stage of discovery, a question of material fact exists regarding whether Wild actually terminated Northcutt. This in turn creates a genuine issue of material facts regarding whether Wild dictated Northcutt's removal as prohibited by section 4.4 or discriminated against her based upon her political affiliations as prohibited by section 11.4. At this early stage of discovery, a question of material fact also exists regarding whether Greene-Beldner terminated or discriminated against Northcutt as prohibited by section 11.4.

I will deny summary judgment on Count IV.

***Conclusion***

Because at this early stage of discovery there is a genuine dispute of material fact over whether Wild terminated Northcutt, I will deny summary judgment in favor of Wild on this issue. A question of material fact also exists regarding whether Defendants Wild and Greene-Beldner retaliated against Northcutt in response to her exercising her First Amendment rights, a clearly established constitutional right. Therefore, I will deny summary judgment on the issue of qualified immunity.

Northcutt has alleged facts that create a dispute of material fact regarding whether Defendants acted in bad faith or with malice, therefore I will deny summary judgment on the basis of official immunity. At this early stage of discovery, a question of material fact exists regarding whether Northcutt was fired exclusively for filing a workers' compensation claim, and as a result I will deny summary judgment on Count III. Finally, because there is not enough on the record before me to find as a matter of law that the Wildwood City Charter does not create an implied private cause of action to remedy violations of sections 4.4 and 11.4, I will deny summary judgment on Count IV.

Accordingly,

**IT IS HEREBY ORDERED** that Wild and Greene-Beldner's Motion for Summary Judgment [#17] is **DENIED**.

**IT IS FURTHER ORDERED** that Defendants' Motion to Strike [#124] is **DENIED** as moot.

Dated this <u>30th</u> day of March, 2007.

                                                RODNEY W. SIPPEL
                                                UNITED STATES DISTRICT JUDGE